IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARC KARDELL,

        Plaintiff,

        v.

LANE COUNTY, LIANE RICHARDSON,
and ALEX GARDNER,

        Defendants.

_____

Case No. 6:13-cv-736-MC

OPINION AND ORDER

MCSHANE, Judge:

        Plaintiff Marc Kardell brings this First Amendment action against his former employer Lane County, Liane Richardson, and Alex Gardner. Kardell claims defendants retaliated against him after he spoke out on various department practices. Kardell also claims he was fired without being provided a hearing, in violation of his Procedural Due Process rights. Because Kardell fails to demonstrate his speech was protected under his rights as a public employee, and because Kardell was not unconstitutionally denied a hearing, his claims fail. Defendants' motions for summary judgment (ECF No. 45 & 47) are GRANTED. Plaintiff's motion for partial summary judgment (ECF No. 52) on one affirmative defense is DENIED as moot.

1 – OPINION AND ORDER

# BACKGROUND[1]

From January 1999 until May 2012, Kardell worked as an Assistant County Counsel for Lane County's County Counsel's Office. Kardell was laid off on May 18, 2012. Kardell argues his layoff was essentially a termination in retaliation for speaking out on various issues regarding what he viewed as problems within the office and, more specifically, with defendant Richardson.

Kardell points to a few specific instances where he spoke out. First, in late 2011 and early 2012, Kardell allegedly spoke with someone in Human Resources about Richardson's investigation of several members of the Lane County Board of Commissioners (the "Board"). Later, on April 27, Kardell emailed the Board, copying defendant Gardner, regarding the retirement of Steve Vorhes, a County land use attorney. Although not mentioned in his email, Kardell now states he "had reason to think that Mr. Vorhes was being removed from his job because he had not agreed with Ms. Richardson in the past, and the forced resignation was being depicted as a budget move." Kardell Decl., ¶ 29.

Kardell argues the above speech was protected under the First Amendment and that defendants unlawfully retaliated against him for speaking out. As noted, on May 18, 2012, Kardell was laid off. Although defendants point to serious budget issues resulting in the layoff, Kardell states the budget issues were simply a pretext for unlawful retaliation.

A few months later, the County posted a job opening for an Assistant County Counsel 2 with "robust experience in labor and employment law." At the time of the layoff, Kardell was an Assistant County Counsel 3 with little experience in labor law. Kardell learned of the posting

---

[1] As this is the defendants' motions for summary judgment, I construe all facts in the light most favorable to Kardell, the non-moving party.

after the County filled the position. Although Kardell requested recall, the County determined Kardell was not eligible for recall under the County's Administrative Procedures Manual (APM).

Kardell includes hundreds of pages of documents relating to highly publicized issues surrounding County mismanagement and Richardson. Many of these documents are newspaper articles published in local media outlets such as the Eugene Register Guard. Ultimately, the Board terminated Richardson for cause.

## STANDARDS

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id*. The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I. First Amendment Retaliation

Kardell alleges he suffered retaliation after exercising his First Amendment rights. Kardell must establish three elements: (1) that he spoke on a matter of public concern; (2) that he spoke as a private citizen and not as a public employee; and (3) that his protected speech was a

3 – OPINION AND ORDER

substantial or motivating factor in the defendant's adverse employment actions. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

Speech is "a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Johnson v. Multnomah Cnty.*, 48 F.3d 420, 422 (9th Cir. 1995) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). Speech alleging that public officials are not discharging government responsibilities, or are undertaking in wrongdoing or breaches of the public trust qualifies as a matter of public concern. *Connick*, 461 U.S. at 148. Speech is not of public concern when it addresses "individual personnel disputes and grievances." *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (citation omitted).

The court determines whether speech qualifies as a matter of public concern by considering the content, form, and context of a given statement. *Johnson*, 48 F.3d 420, 422 (citing *Connick*, 461 U.S. at 147-48). Among those three factors, content is the most important. *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (9th Cir. 2009). It is plaintiff's burden to demonstrate that the speech relates to the public concern. *Johnson*, 48 F.3d at 422. Whether the speech is truly a matter of public concern "is purely a question of law." *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

There is no doubt that during the time period relevant to Kardell's claims, Richardson's administration of the County was the subject of much public interest and press. This case, however, revolves around Kardell's alleged speech and whether his speech has any nexus to Richardson's improper conduct and breaches of the public trust. Despite submitting nearly 500 pages of exhibits in response to defendants' motions, only a few scant paragraphs relate to any particular speech Kardell actually engaged in. At oral argument, in response to my questions

4 – OPINION AND ORDER

relating to the difficulty of weeding out any specific speech other than the April 27 email,

Kardell confirmed his retaliation claim stems from two actions: 1) his discussions with HR; and

2) his April 27 email to the Board. As any unlawful retaliation must stem from something

Kardell actually said or did, and considering that content is the most important factor, I first look

at what Kardell said, and who he said it to. As to the comments to HR, Kardell states:

> 66. Sometime around the Christmas vacation period in 2011, *I began trying to contact Madilyn Zike, Human Resources Director, to express my concern about Ms. Richardson's investigations.* My concerns were based in part on the fact that the County was spending money to conduct outside investigations of meritless allegations. My concerns were also based in part on the fact that Ms. Richardson had previously told me that she would report Mr. McKenzie-Bahr's "P-card" issue if he applied for the County Administrator job (that she was applying for). It further appeared to me that these investigations were repeatedly aimed at persons whose interests occasionally conflicted with those of Ms. Richardson, and to the extent that there were no grounds as to some of these investigations, they harmed the organization.

> 67. Ms. Zike was not in the office the first day that I called her. I made one or two additional attempts to meet with her; then on January 16, 2012, sent an e-mail saying that "if you can't meet with me on Tuesday, please let me know, and I'll try another route. I wish that we could have talked before the article that appeared in Saturday's paper . . . ." Prior to sending the e-mail, *I had left at least one or two voice mail messages for Ms. Zike saying in effect that I wanted to talk with her regarding Richardson and her investigations, and that I had been the attorney in the middle between CED and the Board, and believed that the investigation had included me.* Ms. Zike asked me if we could talk about it tomorrow.

> 68. Ms. Zike was not within my chain of command, and I know of no duty that I had to raise with her or with the Board any issues regarding Ms. Richardson's investigations of Board members and others. *When I first brought this matter to HR, I requested an outside investigator, possibly the same LGPI organization that had investigated Richardson's complaints about the Commissioners.* Zike told me that HR would handle the matter in-house. I was skeptical, and would have preferred an outside investigation, but having brought the matter to the attention of Ms. Zike, I could not control how she chose to proceed.

Kardell Decl., ¶¶ 66-68 (emphasis added) (citations omitted).

At oral argument counsel pointed me to paragraphs 66-68 of Kardell's declarations in

response to my concerns that I had a hard time picking out Kardell's actual speech from the

5 – OPINION AND ORDER

mounds of declarations and exhibits. It was therefore only after oral argument when it became

crystal clear that what Kardell *actually* said to HR was in no way a matter of public concern.

Again, this task was made more difficult as the above declarations are buried in the midst of 28

pages of declarations from Kardell regarding the toxic environment at Lane County. In fact,

Kardell simply discussed a personal issue to HR, as opposed to "any matter of political, social, or

other concern to the community." *Connick*, 461 U.S. at 146. What Kardell *wanted* to say to HR,

outlined in paragraph 66 of his declaration, is irrelevant to his retaliation claim. Kardell's claim

depends on retaliation motivated by what he said, not on the concerns that he had hoped to

express.

 The voice mail messages to HR, "saying in effect that I wanted to talk to her regarding

Richardson and her investigations, and that I had been the attorney in the middle between CED

and the Board, and believed the investigation had included me" included nothing other than the

fact that Kardell wanted to speak to HR in the future about the investigations. Then, when

Kardell finally spoke to HR, he merely requested an outside investigator conduct the

investigation. Kardell Decl. ¶ 68. The fact that Kardell "would have preferred an outside

investigation" does not somehow turn his request to HR into a matter of public concern. Utterly

lacking in Kardell's actual comments to HR are any references to concerns of wasting County

funds on meritless allegations, or allegations of any improprieties by Richardson or anyone else.

 Largely illegible notes from HR's meeting with Kardell support the conclusion that

Kardell's speech here related to a purely personal grievance, as opposed to any matter of public

import. The notes, prepared by HR Director Madilyn Zike, simply reveal Kardell wanted to learn

if he was investigated and why. The notes also reveal Kardell was not interested in any sort of

whistleblowing as to Richardson's alleged improprieties, but rather was dismayed at being

6 – OPINION AND ORDER

passed over for a promotion and Richardson's comments as to Kardell's lack of qualifications for the position. One of the notes outlines Kardell's concern that perhaps Richardson told the Board not to consider Kardell for the County Commissioner opening. Dugan Decl., Ex. 14, 2. Notably absent from the notes is any mention of the concerns Kardell *wanted* to discuss with Human Resources listed in paragraph 66 of his declaration. For example, there is no mention of Kardell's concern that the County was wasting money to conduct outside investigations of meritless allegations. There is no mention that Richardson repeatedly investigated those persons whose interests conflicted with Richardson's own interests.

The fact that Richardson was ultimately terminated for cause does not somehow render Kardell's concerns about personal problems with Richardson a matter of public concern. Although Kardell argues any speech concerning the functioning of government qualifies as a matter of public concern, his own declarations demonstrate his speech concerned standard workplace grievances and not concerns that Richardson was somehow breaking the law or wasting government funds. "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case. . . . [T]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Connick v. Myers*, 461 U.S. at 149.

It is Kardell's burden to demonstrate his speech relates to the public concern. *Johnson*, 48 F.3d at 422. By focusing not on the pages of "context," but instead on the actual content of

Kardell's speech, I conclude his comments to HR were not a matter of public concern and cannot form the basis for any claim of retaliation by defendants.[2]

I next turn to the second basis of speech Kardell claims supports his retaliation claim: the April 27, 2012 email to the Board and Gardner. That email states in full:

> Some of you may be aware of Steve Vorhes upcoming retirement, communication to Mr. Gardner regarding same by some outside the office, and Mr. Gardner's response.
>
> I have worked closely with Steve, especially since his appointment as acting county counsel, and included during the tenure here of Dan Olsen and beyond. My understanding is that the status of Mr. Vorhes was first communicated to him in December, which is very shortly after the new acting county counsel was appointed. I'm also of the understanding that LMD had no input into this change, and input regarding what resources they may need from Legal was not sought at least prior to this month. LMD staff appears to have a very high opinion of Steve.
>
> Please consider directing that this process be put on hold. I would suggest that this occur prior to the end of this month. I also suggest that you review the comments from outside counsel supporting Steve, the response by Mr. Gardner, and that you invite staff attorneys (including Ms. Laidlaw) to speak briefly to the Board in executive session. Once you have more information regarding the path of the office, you can best determine if anything so permanent ought to be undertaken prior to the six month review of the office that was called for when County Counsel was appointed. You could also utilize the 15 minute rule to talk to individual attorneys should you prefer that route.
>
> When Mr. Olsen was acting in our office, the attorneys worked very hard in part to demonstrate that, even while understaffed, the office could have a significant and positive impact on behalf of Lane County. Steve was critically important in a number of those efforts. His knowledge and experience in the land use field is unmatched in Lane County. I urge you to listen to people with experience in local government, and in land use. You all likely have more experience and knowledge about both topics than do some in decision making capacities here. I include myself in having significant deficiencies regarding land use practice. Working as a team, the people in the office can and have blended our various deficiencies

---

[2] As noted, Kardell attached nearly 500 pages of exhibits in his response to the motions for summary judgment. These exhibits ranged from performance reviews to emails and letters to newspaper articles to depositions to largely indecipherable handwritten notes. The court will not scour the record to find evidence to make Kardell's case, especially when counsel specifically pointed to paragraphs 66-68 of his 28-page declaration in response to my direct question asking where I could find the specific contents of Kardell's alleged speech in the mountain of documents.

with our strengths, and produced solid results under often challenging circumstances.

I believe that there was an intent expressed by the Board to review this office at 6 months following the appointment of County Counsel. Before we see permanent changes regarding the status of valuable members of the office, please consider undertaking that review. And put this matter on hold in the interim.

I've not solicited Steve's input in sending this email.

Thank you.

Marc Kardell

P.S. I'm not working today, and was also off yesterday. My home phone is listed, should any of you wish to discuss this further.

Kardell Decl. Ex. V.

The content of the email demonstrates that rather than addressing a matter of great public concern, Kardell simply commented on the fact that he disagreed with the retirement of his friend, and that he thought the office would suffer as a result. That the office happens to work with, and on behalf of, the public, does not turn Kardell's email into a matter of great public import. If that were so, any email relating to any public employee, at any level, would automatically rise to a matter of public concern. After all, every public employee impacts, in some way, the public. But Kardell's email rings of a lobbying effort for a co-worker, not a public comment on a matter of public concern.

That a small group of land use attorneys drafted a similar letter in support of Mr. Vorhes does not alter this conclusion. Yes, land use issues impact the public. But who staffs the office dealing with land use issues is not typically a matter of public concern. Rather, the public is concerned that some competent individual staffs the office, and that land use issues are generally resolved in an efficient manner. That a small group of attorneys supported Mr. Vorhes personally does not turn his retirement into a matter of great importance to the general public at large.

9 – OPINION AND ORDER

Nothing in Kardell's email even obliquely implies that there is any breach of the public trust involved with Mr. Vorhes's retirement. The email does not even hint at a waste of resources, other than in an offhand comment that the quality of the office will suffer with the retirement of its most senior member. His choice of forum also supports the conclusion that his comments focus on an internal personnel decision. Rather than coming forward with public comments during an open Board meeting, Kardell wrote his comments in a private email to the Board and his boss. It was only in the course of this litigation that the email was ever made available to the general public. I conclude Kardell's April 27 email did not concern a matter of public concern, and does not support a claim for retaliation.

Additionally, Kardell appears to have written the email not as a concerned citizen, but rather in his role as a public employee. The email contains Kardell's legal advice to the Board, his client. Kardell suggests putting the process on hold and inviting outside counsel for comments during an executive session. Kardell informs the Board they may choose to "utilize the 15 minute rule." Although Kardell goes out of his way to state he was not working that day, that does not control the outcome. "Statements are made in the speaker's capacity as a citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform." *Eng*, 552 F.3d at 1071. (quoting *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1127 n.2 (9th Cir. 2008) (internal quotations omitted). Legal advice to the Board was, in effect, Kardell's job. Kardell's email came not in the form of a letter to the editor, but in a private email to a group he was paid to advise. A public employee such as Kardell has no First Amendment protections for speech made in the course of one's daily duties. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). I conclude Kardell wrote the email not as a concerned citizen, but in his role as a public employee.

Kardell's whistleblowing claims fails for the same reasons the retaliation claim fails. Oregon Revised Statute 659A.203 prohibits an employer from retaliating against an employee for disclosing any information that the employee reasonably believes is evidence of: "(A) A violation of any federal or state law, rule or regulation by the state, agency or political subdivision; (B) Mismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from action of the state, agency or political subdivision[.]" As noted, Kardell's speech, such as it is, does not disclose any violations of County rules or regulations, no violations of law, and does not allege any impropriety by defendants. Instead, Kardell sought to inquire about whether he was being investigate and, if so, why. Kardell also complained that Richardson stated to the Board that Kardell was not a qualified applicant for County Counsel. None of Kardell's speech triggers the protections of the whistleblowing statute.

As Kardell has not met his burden to demonstrate he spoke on matters of public concern on the speech at issue, defendants' motions for summary judgment on the retaliation and whistleblowing claims is GRANTED.

## II. Procedural Due Process

To prevail on this claim, Kardell must establish: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations omitted).

11 – OPINION AND ORDER

Kardell argues he was entitled to a pre or post termination hearing. However, Kardell points to no state or County law requiring such a hearing. In fact, Kardell's layoff occurred pursuant to the County's APM. Additionally, Kardell never requested a hearing regarding his termination. It is undisputed that Kardell received advance notice that his layoff was due to budgetary reasons. If Kardell believed that justification was merely a sham for unlawful retaliation, as he now alleges, it was his obligation to request a hearing. *See Franks v. Magnolia Hosp.*, 888 F. Supp. 1310, 1316 (N. D. Miss. 1995) ("Certainly the plaintiff should not be permitted to sit on her hands and then complain to the court that she was not given an express opportunity to question her discharge.") Having failed to make such a request, he cannot now bring a claim based on a hearing he was not entitled to under the APM and that he did not in fact request. Any other outcome would require the state to provide a hearing for all employees laid off for stated budgetary reasons. The Constitution, however, contains no such requirement. Because Kardell points to no deprivation of any process due, defendants' motions for summary judgment on the procedural due process claim is GRANTED.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

12 – OPINION AND ORDER

## CONCLUSION

It is undisputed that the Board terminated Richardson for cause. That alone, however, does not provide a basis for Kardell's constitutional claims. Despite producing a 28 page declaration and nearly 500 pages of exhibits, Kardell only demonstrates he raised concerns of inner-office personality conflicts and inquired as to if he was being investigated and, if so, for what. Although many newspaper articles at the time and after Kardell's speech certainly involved matters of public concern, Kardell fails to demonstrate he actually spoke out on any of those matters. Defendants' motions for summary judgment (ECF No. 45 & 47) are GRANTED. Plaintiff's motion for partial summary judgment (ECF No. 52) on one affirmative defense is DENIED as moot.

IT IS SO ORDERED.

DATED this 3rd day of September, 2014.


/s/ Michael J. McShane
Michael McShane
United States District Judge

13 – OPINION AND ORDER